## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## BEAUMONT DIVISION

| | |
|---|---|
| Peter Harris and Loni Harris,<br><br>*Plaintiffs*,<br><br>v.<br><br>Upwintrade.com, a business association; David Shamlian, an individual; Onwunali Chukwuemeka, an individual; Kelvin Dubem, an individual; Larry Gaggaz, an individual; and John Does 1 – 20,<br><br>*Defendants*. | Case No. 1:24-cv-00313-MJT<br><br><br>**First Amended Complaint** |

Plaintiffs Peter Harris and Loni Harris hereby sue the above-captioned parties (collectively, the "Defendants"). In support, they allege as follows.

### I.    Preliminary Statement

1.    Our country is in the midst of a crypto-fraud crisis. Foreign criminal organizations have stolen billions of dollars from hardworking Americans in what is known as "pig-butchering" scams—and are continuing to do so even as we speak.

2.    Pig-butchering scams vary in their particulars, but they are all the same in outline. The scammers begin by initiating contact with and building trust with the victim, using diabolical psychological techniques to

- 1 -

lower their target's defenses. They then convince the victim to "invest" using a realistic-looking online cryptocurrency-trading platform. The victim deposits money, and over time, profits appear to grow. But, when the victim tries to withdraw, various issues emerge. The scammers demand more money in 'taxes' or 'fees' to 'unlock' the victim's account. Desperate for their money back, victims often comply. When it finally becomes clear that the whole enterprise is a sham, it is too late. The scammers disappear with the victim's money and cut off contact.

3.    Tens of thousands of hardworking Americans have lost their life savings to these scams. Recent literature indicates that pig-butchering organizations have stolen more than $75 billion from victims worldwide since 2020. In the United States alone, victims reported losses of $2.6 billion to pig butchering and other crypto scams in 2022—more than double the amount reported the previous year.

4.    This is an action by a victim of two victims of a pig-butchering scam, Mr. Peter Harris and Ms. Loni Harris. The Harrises are a married couple from San Francisco. The Defendants tricked them into investing on a platform that turned out to be a scam and stole more than $650,000.00 of their savings. They have now been "slaughtered," in the scammers' parlance, and their money spirited away to foreign bank accounts and crypto wallets.

5.      This action is the Harrises' only hope for recovery. They seek the return of the assets stolen from them and additional damages and equitable relief as described below.

**II.    Parties**

6.      Plaintiff Peter Harris is an individual. He is a resident of San Francisco, California.

7.      Plaintiff Loni Harris is an individual. She is a resident of San Francisco, California.

8.      Upwintrade.com is a fraudulent cryptocurrency-investment platform. Its headquarters and situs of organization (if any), are presently unknown.

9.      David Shamlian is an individual. His current residence is unknown.

10.     Onwunali Chukwuemeka is an individual residing in Lagos, Nigeria.

11.     Kelvin Dubem is an individual residing in Lagos, Nigeria. This individual is also known by the aliases "Kelvin Frank" and "Kelvin Chidubem." Each of these names refer to the same individual.

12.     Larry Gaggaz is an individual residing in Dallas, Texas. "Larry Gaggaz" is believed to be a pseudonym.

13.     Defendants John Doe 1 – 20 are as-yet unidentified individuals, business entities, and/or unincorporated associations.

### III.    Jurisdiction & Venue

14.    This is an action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Accordingly, this Court has federal-question jurisdiction.

15.    Each of the Defendants are subject to the personal jurisdiction of this Court because they direct business activities towards and conduct business with consumers throughout the United States, including within the State of Texas and this district through at least one fraudulent website and mobile application accessible from Texas. Alternatively, the Defendants are subject to personal jurisdiction in this district because (i) they are not subject to jurisdiction in any state's court of general jurisdiction and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

16.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(c)(3), which provides that a foreign defendant may be sued in any judicial district.

### IV.    Allegations

17.    In February 2024, Loni Harris saw a Facebook post that appeared to be posted by a friend of hers from high school. The post mentioned the friend's recent success in investments under the guidance of a mentor named David. Loni reached out to this friend via Facebook messenger to learn more. The friend referred her to one David Shamlian, who Loni subsquently contacted directly. The Harrises later confirmed that this Facebook account

was not controlled by Loni Harris's old friend, but was instead a fraudulent account controlled by the Defendants, designed solely to deceive and steal.

18.     Shamlian told the Harrises about his great success investing and trading in cryptocurrencies. He soon introduced them to a platform called Upwintrade. Shamlian told the Harrises that he knew how to make profits using the Upwintrade platform, and offered to teach them how to do the same. He encouraged the Harrises to make an Upwintrade account, which they soon did.

19.     Over the next several months, Shamlian 'trained' the Harrises in cryptocurrency trading using the Upwintrade platform. When the Harrises were ready to make a deposit on Upwintrade, the platform's representatives provided them asset-transfer instructions via the platform's customer-service chat or on its "deposit" page. The Harrises completed the transactions as instructed. Each time, the amount of the funds they 'deposited' would then be reflected in their transaction history and account balance on the Upwintrade platform. Over time, they sent assets to Upwintrade with a dollar-denominated value of more than $650,000.00.

20.     The Harrises' balance on the Upwintrade platform appeared to grow rapidly. Eventually, they attempted to make withdrawals. But Upwintrade informed them that they could not withdraw theiur funds without paying significant taxes and fees. The Harrises soon realized that they had been scammed.

21.     The Upwintrade platform was never a "trading platform" of any sort. It was a simulacrum of an trading platform, where no actual trading or investment ever occurred. The account balances, the purported profits, and the transaction history displayed were real in the sense that they reflected the monies the Harrises sent to the Defendants. And this was simply to ensure that the platform appeared to be functioning. The assets the Harrises transferred to the Defendants was never 'deposited' on the platform. They were never used for cryptocurrency trading or anything else. They were simply stolen.

22.     The Harrises were not the only victims of the Upwintrade scam. At least dozens of other persons were scammed by the Defendants in a period extending over one year. Indeed, since filing this suit, the Harrises have been contacted by three other victims of the Upwintrade scam with collective losses exceeding $150,000.00.

23.     After the Harrises filed this action in August 2024, the Court authorized them to serve subpoenas on two web-hosting companies that did business with the individuals who created and operated davidshamlian.com and upwintrade.com. These are the websites that Shamlian and Upwintrade used to deceive the Harrises and carry out their scheme. Both of these companies produced responsive materials in due course.

24.     The materials produced by the web-hosting provider for davidshamlian.com indicated that two individuals named Onwunali

Chukwuemeka and Kelvin Dubem had created, maintained, and paid for the website of the fictitious cryptocurrency "guru" David Shamlian. Chukwuemeka and Dubem provided contact information indicating that they are residents of Lagos, Nigeria. These materials further indicated that these individuals had created a number of cryptocurrency-investment related websites, several of which had previously been suspended due to complaints of fraud and theft. Chukwuemeka and Dubem are professional cybercriminals and are the perpetrators of the Upwintrade scam.

25.    The materials produced by the web-hosting provider for upwintrade.com indicated that an individual named Larry Gaggaz had created, maintained, and paid for the website of the fraudulent Upwintrade cryptocurrency-trading platform. Gaggaz provided contact information indicating that he is a resident of Dallas, Texas. The subpoena materials produced further indicated that this individual had created a number of cryptocurrency-investment related websites, several of which had previously been suspended due to complaints of fraud and theft. Gaggaz is a professional cybercriminal and another perpetrator of the Upwintrade scam, which he carried out with the assistance of and in coordination with Chukwuemeka and Dubem.

## V.    Causes of Action

26.    The Harrises bring the following causes of action against the Defendants. The allegations set out above are incorporated into each of the causes of action that follow as if fully restated therein.

**Count One**
**Racketeering in Violation of 18 U.S.C. § 1962(c)**
**Against All Defendants**

27.    David Shamlian, Upwintrade.com, Onwunali Chukwuemeka, Kelvin Dubem, Larry Gaggaz, and John Does 1 – 20 (collectively, the "Defendants") constituted an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c), in that they are a group of individuals and legal entities associated in fact. Their enterprise is referred to herein as the "Upwintrade Enterprise."

28.    The Unwintrade Enterprise engaged in numerous acts of wire fraud in violation of 18 U.S.C. § 1343, as described in paragraphs 11 – 19, supra. They did so using the Upwintrade website and mobile app, Skype chat, Facebook messenger, emails, and other forms of digital communication with the Harrises and others. The Harrises relied on the Defendants' fraudulent statements to their detriment.

29.    The Defendants shared the common purpose of defrauding and stealing from the Harrises and other victims and thereby converting and exercising dominion over their assets.

30.    The Defendants are each a "person" within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c). Each of them individually conducted, participated in, engaged in, and operated and managed the affairs of the Upwintrade Enterprise through a pattern of racketeering activity within the meaning if 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c). Said pattern of

racketeering activity consisted of, but was not limited to, the acts of wire fraud described above.

31.    All the acts of racketeering activity described above were related so as to establish a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c). Their perpetrators' common purpose was to defraud the Harrises and other victims and convert and exercise dominion and control over those victims' assets. Each Defendant, directly or indirectly, participated in all of the acts and employed the same or similar methods of commission.

32.    The Upwintrade Enterprise was of sufficient longevity for its members to carry out their purposes on a large scale. All of the acts of racketeering described above, were continuous so as to form a pattern of racketeering activity in that the Defendants have engaged in the predicate acts for a substantial period of time exceeding one year. The Upwintrade Enterprise successfully defrauded at least dozens of persons and converted millions of dollars worth of its victims' assets, including the Harrises'. To the extent the Upwintrade Enterprise's activities have ceased or cease while this litigation is pending, these acts posed threat of indefinite duration at the time they were committed and will have stopped only because they were fortuitously interrupted by events beyond the Defendants' control.

33.    As a direct and proximate result of, and by reason of, the activities of the Defendants and their conduct in violation of 18 U.S.C. § 1962(c), the Harrises were injured in their business and property, within the

meaning of 18 U.S.C. § 1964(c). The Defendants stole the Harrises's savings and thereby caused them and their family to suffer deprivations and extreme mental and emotional distress. They are, therefore, entitled to recover threefold the damages sustained together with the cost of the suit, including costs, reasonable attorneys' fees and reasonable experts' fees.

### Count II
### Conversion
### Against All Defendants

34.    As more fully alleged above, the Defendants misappropriated the Harrises's funds.

35.    The Defendants converted the Harrises's funds to their own use or the use of others not entitled to it. They have exercised dominion and control over the funds to the Harrises's exclusion and detriment.

36.    The Harrises have suffered damages as a direct and proximate result of Defendants' conversion.

### Count III
### Fraud
### Against All Defendants

37.    To prevail on a fraud claim, a plaintiff must show that the defendant made (1) a false representation, (2) of a matter of material fact, (3) with knowledge of its falsity, (4) for the purpose of inducing action thereon, and (5) that the plaintiff relied upon the representation as true and acted upon it to his or her damage.

38.     As alleged above, the Defendants made numerous false representations to the Harrises, including that theirs was a legitimate trading platform through which they might make a return on their assets. They did so with knowledge of the falsity of these statements and with actual intent to induce the Harrises to rely on their statements to his detriment, which they did.

## VI.    Relief Sought

39.     The Harrises request that judgment be entered against each of the Defendants on each of the causes of action set out above. They seek relief as follows:

a.  Imposition of a constructive trust over their stolen assets and return of those assets to their possession;

b.  Monetary damages;

c.  Statutory trebled damages pursuant to 18 U.S.C. § 1964(c);

d.  Punitive damages;

e.  Costs, including reasonable attorneys' fees under 18 U.S.C. § 1964(c);

f.  Pre- and post-judgment interest;

g.  Injunctive and equitable relief insofar as required to preserve assets for recovery, halt the Defendants' unlawful acts, and otherwise enable the exercise of the Court's powers and effecutate its orders;

h.  Other relief as the Court deems just and proper.

- 11 -

40.    The Harrises demand a jury trial on all claims so triable.

Dated:  January 13, 2025                    Respectfully submitted,

THE HODA LAW FIRM, PLLC

_____

Marshal J. Hoda, Esq.
Tx. Bar No. 2411009
12333 Sowden Road, Suite B
PMB 51811
Houston, TX 77080
o. (832) 848-0036
marshal@thehodalawfirm.com

*Attorney for Plaintiffs*