# PUBLIC REDACTED VERSION

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

| | |
|---|---|
| Peter Harris and Loni Harris, | |
| *Plaintiffs*, | Case No. 1:24-cv-00313-MJT |
| v. | |
| Upwintrade.com, *et al.*, | **Plaintiffs' Motion for Default Judgment** |
| *Defendants*. | |

## I. Relief requested and issues presented

Plaintiffs Peter Harris and Loni Harris move under Rule 55(b)(2) for final judgment against Onwunali Chukwuemeka, Kelvin Dubem, Defendant C, Defendant D, Defendant E, Defendant F, and Defendant G (the "Defaulting Defendants"), jointly and severally, awarding $2,405,696.55 in RICO damages and $721,708.97 in attorney's fees, for a total of $3,127,405.52, plus statutory postjudgment interest. The damages equal three times the $801,898.85 loss reflected by the transfer schedule; the requested fee is 30% of those trebled damages. Plaintiffs request determination of both amounts in this motion and final disposition of all remaining claims and parties.

The issues are whether service and default support judgment on the operative pleading; whether the pleaded facts and evidence establish each defendant's RICO liability and United States contacts; the proven loss and reasonable attorney's fee; appropriate treatment under the Servicemembers Civil Relief Act; and final disposition of all claims and parties.

## II. Background and procedural history

The Second Amended Complaint alleges that a false Facebook referral led the Harrises to a purported cryptocurrency mentor, David Shamlian, and the Upwintrade platform. The platform induced transfers by displaying apparent deposits and investment profits, but withheld withdrawals and demanded further taxes or fees. Plaintiffs allege that no genuine trading occurred and that the apparent platform concealed the theft of their assets. Second Am. Compl. ("SAC"), Dkts. 37, 40, ¶¶ 22–27.

The SAC identifies separate roles in the scheme. Hosting records linked Chukwuemeka and Dubem to the Shamlian website and related cryptocurrency websites; later tracing and Binance records identified accounts held by the other five defendants as recipients of the Harrises' assets. SAC ¶¶ 28–31. Plaintiffs rely on the operative SAC, rather than treating superseded pleadings as cumulative operative allegations.

The Clerk entered default against Chukwuemeka and Dubem on March 18, 2025. Dkt. 29. The sealed Second Amended Complaint ("SAC") was filed June 11, 2025, with a public redacted counterpart at Dkt. 40. The five additional defendants were served by Court-authorized email on June 26,

2025. Dkts. 43–44, 46–50. The Clerk entered default against them on August 4, 2025. Dkt. 55. Certain service and default filings use shortened names for the five additional defendants; this public version uses consistent Defendant C–G labels for those same individuals. See Dkts. 38-1, 43, 46–50, 55; Cole Decl. ¶ 3.

Chukwuemeka and Dubem were served with the SAC by email on September 16, 2025. Dkts. 57–58. Dkt. 19, the governing service order, was signed January 14, 2025; the January 15 reference in those proofs is a date-reference error. The accompanying declarations supplement the proof of the Court-authorized email service, including the requested read receipts. Cole Decl. ¶¶ 14–16; Hoda Decl. ¶¶ 3–5. No Defendant has answered, appeared, requested an extension, or communicated an intention to defend. Hoda Decl. ¶ 6.

During the delay, Plaintiffs pursued server-provider discovery and investigation connecting Upwintrade to TradePropel. Evan Cole's signed March 6, 2026 report is now submitted as Exhibit EC-3. The firm submitted a remission petition concerning asset 25-USS-000030 in connection with District of Massachusetts No. 1:25-cv-10413-IT and later supplemented that petition. It remains pending, and the Harrises have received no recovery. Hoda Decl. ¶¶ 8–10; Peter Harris Supp. Decl. ¶¶ 3–4. The petition is not a government adjudication of liability or entitlement to payment.

## III. Jurisdiction, service, and default

This Court has federal-question jurisdiction over Count I under 28 U.S.C. § 1331 and supplemental jurisdiction over the related state-law claims under 28 U.S.C. § 1367. Personal jurisdiction and valid service must be established independently of default. Plaintiffs invoke the Court-authorized email-service orders and, for the foreign individual defendants, Rule 4(k)(2). *Nagravision SA v. Gotech International Technology Ltd*., 882 F.3d 494, 498–99 (5th Cir. 2018).

The pleaded contacts concern deliberate participation in an operation that solicited the Harrises, California residents, and induced their transfers to addresses selected by the operation. Chukwuemeka and Dubem created, maintained, and paid for the fictitious mentor's website used to recruit the Harrises. SAC ¶¶ 22–29. Each of the other five defendants allegedly served as a designated recipient, repeatedly receiving U.S.-exchange-sourced assets and moving them onward or cashing them out through foreign bank accounts. SAC ¶ 31; Cole's June 11, 2025 declaration, Dkt. 38-1, ¶¶ 3–4. Plaintiffs submit that these alleged knowing, suit-related acts—not mere website accessibility or incidental receipt—constitute purposeful participation in targeting U.S. victims. The report supplies corroborating platform-level evidence, not a substitute for the required defendant-specific inquiry.

The SAC expressly invokes Rule 4(k)(2), and no Defaulting Defendant has identified another state forum or disputed the alleged U.S.-directed conduct. Under *Nagravision*, Plaintiffs must establish the requisite national

contacts but need not negate jurisdiction in every state. 882 F.3d at 498–99. Plaintiffs request the Court's independent jurisdictional determination for each defendant on the submitted record.

Under Rule 55(b)(2), the Court determines whether the well-pleaded allegations support liability and whether the evidence establishes damages. Default does not admit legal conclusions or the amount of loss. *Wooten v. McDonald Transit Associates, Inc.*, 788 F.3d 490, 496–500 (5th Cir. 2015). The documentary record supplies the pleaded facts, service evidence, transfer schedule, and declarations on which Plaintiffs request a decision. The *Lindsey* considerations favor relief: there is no competing factual submission; nonparticipation prevents adjudication and prolongs an uncompensated loss; the response periods have expired; and Defendants have offered no explanation suggesting mistake or excusable neglect. The requested recovery is tied to the pleaded fraud and documented transfers. See *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

Counsel cannot determine whether any of the seven individuals is in military service and expressly so states under 50 U.S.C. § 3931(b)(1)(B). Hoda Decl. ¶ 7. Plaintiffs request that the Court accept that declaration and enter judgment without requiring a discretionary bond under § 3931(b)(3). No Defendant has appeared, so Rule 55(b)(2)'s notice requirement for an appearing defendant is not triggered on the facts presented. Plaintiffs rely on

Rule 5(a)(2) for nonservice of this motion and request excusal of an impracticable conference, as explained in the certificates below.

**IV. RICO liability**

Count I asserts a violation of 18 U.S.C. § 1962(c). Civil recovery requires a § 1962 violation, injury to business or property, and proximate causation. *Lewis v. Danos*, 83 F.4th 948, 956 (5th Cir. 2023). The association-in-fact alleged here combines recruitment and false mentorship, operation of a sham platform, and receipt and movement of victim funds for a common fraudulent purpose. SAC ¶¶ 22–39. An association-in-fact requires purpose, relationships and longevity sufficient to pursue its purpose. *Boyle v. United States*, 556 U.S. 938, 946 (2009). The alleged association is distinct from each individual defendant.

The pleaded division of labor supports operation or management rather than an incidental business relationship. *Reves v. Ernst & Young*, 507 U.S. 170, 179, 184–85 (1993). Chukwuemeka and Dubem allegedly operated the fictitious mentor's web presence and similar cryptocurrency websites. SAC ¶ 29. Defendants C, D, E, F, and G allegedly performed the receipt, transfer, and cashout functions through their accounts as designated recipients of the stolen assets. SAC ¶ 31. Plaintiffs ask the Court to infer knowing participation from those alleged repeated activities and coordinated roles, not merely account ownership or one innocent transfer.

The fraud chronology identifies the February 2024 Facebook impersonation and referral, Shamlian's representations that Upwintrade was

a profitable trading platform, the subsequent instructions through the platform's chat and deposit page, and the transfers induced by those instructions. The first transfer was February 28, 2024, followed by the 21 additional transfers in PH-1. When withdrawal was attempted, the platform demanded additional taxes or fees. SAC ¶¶ 22–26; PH-1 ¶¶ 2–7 & att. 1. The false trading representation and the induced transfers identify the scheme's content, medium, participants, and course of conduct. Plaintiffs rely on the factual allegations, not default as a cure for a missing element under Rule 9(b).

Relatedness is supplied by the repeated use of the same sham-investment scheme, recruitment method, platform, and asset-transfer objective. Continuity rests on the allegations of numerous other victims and operation exceeding one year, rather than the number of the Harrises' transfers alone. SAC ¶¶ 27, 33–38; *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239–43 (1989). The later server examination corroborates a reusable operation extending beyond one victim or isolated transaction.

Cole's March 6 report identifies domain/account mappings and an Upwintrade DNS zone; remnants of a deleted Upwintrade cPanel account; identical or near-identical application components and shared administration structures; unusual backup-file conventions; and common test identifiers recovered from databases. EC-3 at 2–6, 8–15; Cole Decl. ¶¶ 6–11. It concludes that the platforms were operationally connected and likely controlled by the

same operator or group. EC-3 at 17. Plaintiffs preserve that qualification: the report does not prove that every component was identical, that 651 extracted user records represent 651 distinct victims, or that every named defendant controlled every platform.

The injury claimed is the loss of the Harrises' own assets induced by the fraudulent transfer instructions, not the loss of fictitious displayed profits. Their California residence, the recruitment directed to them, their ownership and transfer of the assets, and their inability to recover those assets support domestic injury under the context-specific inquiry in *Yegiazaryan v. Smagin*, 599 U.S. 533, 543–45 (2023). SAC ¶¶ 6–7, 22–26; PH-1 ¶¶ 4–7. The immediate victims seek their own loss, directly caused by the alleged enterprise's conduct.

## V. Damages, fees, and interest

Peter Harris's executed March 26, 2025 declaration authenticates its attached 22-transfer schedule. PH-1 ¶ 6 & att. 1. The schedule spans February 28 through June 16, 2024 and lists 12.44186223 BTC. Its displayed dollar amounts sum to $801,898.85, one cent below the $801,898.86 stated in paragraph 6. Plaintiffs use the lower arithmetic total without altering the signed original or attributing the difference to an unverified rounding cause. Peter Harris Supp. Decl. ¶ 5; Cole Decl. ¶¶ 12–13. The amount is based on the historical dollar entries in the authenticated schedule, not current Bitcoin prices or fabricated returns.

Section 1964(c) requires threefold damages for injury caused by a RICO violation: $801,898.85 × 3 = $2,405,696.55. That is a single award inclusive of principal, not principal plus a second trebled award. Plaintiffs seek joint-and-several responsibility for the single injury caused by the defendants' alleged coordinated participation in the same enterprise. S*ee Fleischhauer v. Feltner*, 879 F.2d 1290, 1301 (6th Cir. 1989). This request depends on establishing each defendant's participation and causation; a downstream account balance is not itself proof of liability for the entire loss. No duplicate recovery is requested.

Rule 54(c) limits default relief to the kind and amount demanded. The SAC requests monetary damages and statutory trebling under § 1964(c); it does not state a numerical ceiling. SAC ¶¶ 4, 24, 39 & prayer. The requested damages measure the same transfers alleged in that pleading.

Section 1964(c) also authorizes a reasonable attorney's fee. Plaintiffs request $721,708.97, calculated as 30% of the $2,405,696.55 RICO damages and rounded to cents. The firm's written engagement agreement includes a 30% contingent fee, which counsel considers standard and reasonable for recovery litigation of this kind. Hoda Decl. ¶¶ 12–13. The requested fee reflects the representation described in the record, including investigation, third-party discovery, tracing, service on foreign defendants, and preparation of the default-judgment submissions. Plaintiffs ask the Court to determine

the reasonable fee on this record and include that determination in the final judgment. The requested combined award is $3,127,405.52.

Plaintiffs seek no separate hourly fee, fee calculated on the fee award, separately taxed costs, prejudgment interest, punitive award, or equitable recovery. They reserve no later application for additional fees or costs in this action. Hoda Decl. ¶ 14. Statutory postjudgment interest accrues under 28 U.S.C. § 1961. Any payment for the same injury, including a future remission payment, will be disclosed and credited as required to prevent double recovery. The judgment would not adjudicate remission eligibility or direct disbursement of another court's seized property.

## VI. Final disposition of all claims and parties

Plaintiffs elect Count I as their sole remaining basis for merits recovery. Concurrently with final adjudication of Count I, Plaintiffs request dismissal with prejudice under Rules 15(a)(2) and 21 of Counts II and III against the seven Defaulting Defendants and of all claims against Upwintrade.com, David Shamlian, Larry Gaggaz, and John Does 1–20. Plaintiffs relinquish all other merits remedies in this action. This election is not conditioned on an award of the full requested damages or attorney's fees. Plaintiffs request dismissal by the final judgment; this motion is not a self-executing notice of dismissal.

The requested dismissals eliminate the remaining merits controversy without adverse liability findings against nondefaulting parties and avoid leaving overlapping claims for an inconsistent determination under *Frow v.*

*De La Vega*, 82 U.S. (15 Wall.) 552, 554 (1872). Plaintiffs request one Final Default Judgment under Rule 58 that adjudicates Count I, determines attorney's fees, dismisses every remaining claim and party, and directs the Clerk to close the case. No Rule 54(b) certification or later fee or cost application is requested.

Upon entry of the final judgment disposing of all claims and parties, Plaintiffs request termination of the preliminary injunctive relief in this action. The judgment will not affect restraints imposed in another proceeding. Plaintiffs seek no permanent injunction or order releasing property held in another proceeding.

## VII. Conclusion

Plaintiffs request final judgment against the seven Defaulting Defendants, jointly and severally, awarding $2,405,696.55 in RICO damages and $721,708.97 in attorney's fees, totaling $3,127,405.52, plus statutory postjudgment interest. Plaintiffs request that the same final judgment dismiss all remaining claims and parties with prejudice, terminate the preliminary injunctive relief in this action, and direct closure of the case, with no additional fee or cost application reserved.

Dated: 15 September 2026

Respectfully submitted,
THE HODA LAW FIRM, PLLC

/s/ M Hoda

Marshal J. Hoda, Esq.
Texas Bar No. 24110009
3120 Southwest Fwy, Suite 101
PMB 51811
Houston, TX 77098
marshal@thehodalawfirm.com
Telephone: (832) 848-0036
*Attorney for Plaintiffs*

## CERTIFICATE REGARDING SERVICE

No copy has been served on Defendants. Plaintiffs rely on Rule 5(a)(2) because Defendants have failed to appear and this submission asserts no new claim for relief.

## CERTIFICATE OF CONFERENCE AND REQUEST FOR EXCUSAL

No conference has occurred. Defendants have not appeared or communicated with the firm, no defense counsel has appeared, and counsel cannot confer with them. Their position is unknown. Plaintiffs request excusal of the conference requirement under Local Rule CV-7(h)–(i).



Marshal J. Hoda, Counsel for Plaintiffs