# PUBLIC REDACTED VERSION

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

| | |
|---|---|
| Peter Harris and Loni Harris,<br><br>*Plaintiffs*,<br><br>v.<br><br>Upwintrade.com, *et al.*,<br><br>*Defendants*. | Case No. 1:24-cv-00313-MJT<br><br>**Declaration of Evan Cole Supporting Plaintiffs' Motion for Default Judgment** |

I, Evan Cole, declare as follows:

1. I am Head of Investigations at The Hoda Law Firm, PLLC and have participated in the investigation of the fraud involving Peter and Loni Harris and Upwintrade. I make this declaration concerning my investigative work, my report, and the records identified below.

2. My blockchain-investigation qualifications include the Chainalysis Cryptocurrency Fundamentals, Chainalysis Reactor, and Lukka Crypto Asset Investigation I certifications identified in

my June 11, 2025 declaration. That declaration addressed the Binance production and appears at Dkt. 38-1.

3. The five Binance accountholders identified in that declaration are Defendant E, Defendant F, Defendant G, Defendant C, and Defendant D. These public labels used in this declaration and proposed judgment identify the same accountholders described in the SAC and the June 23, 2025 service order, Dkt. 43.

4. Exhibit EC-2 is the Data Room / Server Room correspondence maintained by the firm. The provider reported that IP address 162.244.81.128 was assigned to an account identified with Larry Gaggaz and described cPanel hosting and abuse complaints. The provider also said that its customer was most likely itself a hosting-service provider. I do not treat the subscriber's supplied identity as independently verified or shared hosting alone as proof of common criminal control.

5. I prepared the report entitled "Report: Tradepropel Server Disk Image Inspection and Connections to IATmarket and Upwintrade," dated March 6, 2026. Exhibit EC-3 is a true copy of my 17-page signed report. I adopt its findings subject to the qualifications explained here. The report identifies the source paths and comparisons underlying those findings.

6. The report describes read-only inspection of a server disk image mounted at /root/data and analysis of text strings extracted from forensic copies of MySQL InnoDB table files. It compares domain/account mappings, Apache and DNS configuration, application components, database structures, and recovered database strings. EC-3 at 1–6, 8–15. The work described in the report did not modify the server data.

7. The report identifies a configured Upwintrade DNS zone and remnants of a deleted Upwintrade cPanel account. It distinguishes those remnants from the available Avantxperts/Upwinmarkets deployment, which likely reflects the deleted account's data and configuration. It does not claim that a complete, undeleted Upwintrade application account was available. EC-3 at 2–6.

8. The comparison found identical entry-point files and identical or near-identical controllers, models, configuration templates, and administrative views across the compared deployments. Some TradePropel components differ in ordering or implementation; the report does not establish that every byte of all applications was identical. EC-3 at 8–12.

9. The report also identifies unusual backup or alternate extensions, including .bnk, .olld, .nmm, and .mmmm, and common test identifiers appearing across platform databases. I considered these operational and testing artifacts together with the code and configuration similarities, rather than relying solely on a shared IP address or common software framework. EC-3 at 11–15.

10. The database-string extraction yielded 651 user records after deduplication by email and platform: 238 for IATmarket, 241 for TradePropel, and 172 for Upwintrade. Those counts include test or potential operator accounts and do not establish 651 distinct victims. The reverse-IP figures in the report describe the investigation reported there, not a new lookup as of this declaration. EC-3 at 3, 14–17.

11. My conclusion is that the domains are operationally connected, use the same platform, and are likely controlled by the same operator or group rather than merely coincidentally sharing a host. EC-3 at 17. That platform-level conclusion does not, by itself, identify each defendant's individual role or prove that every person with an account on the server participated in the fraud. The earlier hosting and Binance evidence must be considered separately for individual attribution.

12. I reviewed the transfer schedule attached to Peter Harris's March 26, 2025 declaration, Exhibit PH-1. It lists 22 Bitcoin transfers between February 28 and June 16, 2024, totaling 12.44186223 BTC. Adding the schedule's displayed dollar entries gives $801,898.85.

13. The earlier declaration states $801,898.86, one cent above the schedule's arithmetic total. I have not changed the original declaration or its schedule. The present request uses the lower sum. My calculation adds the historical values displayed in PH-1; it is not an independent valuation at current cryptocurrency prices or a claim for the platform's displayed profits.

14. On June 26, 2025, I sent the Court-authorized service emails to the five additional defendants identified in paragraph 3. The matching saved PDF attachment for each recipient combines the summons, SAC, and June 23 order. The emails were sent with read receipt requested. The filed proofs are Dkts. 46–50. The fact that the saved email printouts list one attachment does not mean only a summons was enclosed: each matching combined PDF contains 18 pages.

15. I also served the SAC on Onwunali Chukwuemeka and Kelvin Dubem by email on September 16, 2025, as stated in

Dkts. 57–58, with read receipts requested. Those proofs refer to the service order as dated January 15; the correct governing order is Dkt. 19, signed January 14, 2025. This paragraph corrects that date reference and does not change the actual service date.

16. No Defendant has responded or communicated an intention to defend to me. This declaration supplements the earlier service proofs; it does not represent that the new default-judgment motion has already been served.

17. My report contains recovered credentials and personal contact and user data. Those details permit identification or attempted access without being necessary to understand the technical comparison. Public redactions can protect those details while leaving the source paths, methods, comparisons, limitations, and conclusions available. I do not rely on the report's confidentiality footer alone as a basis for sealing.

## VERIFICATION

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 14 September 2026 at Jackson, Mississippi.

Evan Cole
Head of Investigations | The Hoda Law Firm, PLLC

**CERTIFICATE REGARDING SERVICE**

No copy has been served on Defendants. Plaintiffs rely on Rule 5(a)(2) because Defendants have failed to appear and this submission asserts no new claim for relief.

______________________________

Marshal J. Hoda, Counsel for Plaintiffs